RECEIVED
JUL 2 1 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| KRAFT FOOD INGREDIENTS, CORP | CIVIL ACTION NUMBER: 07-1842 |
| VERSUS | JUDGE DOHERTY |
| PCI INTERNATIONAL CONSULTANTS, INC., ET AL | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Currently pending before this Court is a Motion for Partial Summary Judgment [Rec. Doc. 7], filed by plaintiff, Kraft Food Ingredients Corp. ("Kraft," sometimes referred to as "KFIC"). In its motion, plaintiff "seeks an Order from the Court declaring a Restrictive Covenant contained within the Exclusive Distributorship Agreement between Kraft and the defendant, PCI International, Inc., as void and unenforceable as a matter of law . . . ."[1] [Rec. Doc. 7, p. 1; *see also* Rec. Doc. 1, Count IV] Plaintiff argues it is entitled to such relief, because the restrictive covenant constitutes "an impermissible restraint of trade for which PCI can offer no pro-competitive justification or other basis in law to permit its enforcement." [Rec. Doc. 7-3, p. 1]

Kraft filed this lawsuit, asserting four causes of action: (1) breach of contract; (2) tortious interference with a contract; (3) intentional misrepresentation/detrimental reliance; and (4) "declaratory relief." Kraft asserts this Court's has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states[2], and the matter in controversy exceeds

---

[1] Stated another way, plaintiff moves the Court for a declaratory judgment, which holds that the contract entered into by and between plaintiff and defendant, contains a clause ("Covenant of Non-Solicitation"), which is legally void and unenforceable.

[2] Plaintiff is a Delaware corporation with its principal place of business within the State of Tennessee; defendant is a Louisiana corporation with its principal place of business within the State of

$75,000.[3]

According to all parties, effective February 21, 1992, KFIC and PCI entered into a contract, whereby PCI became the sole and exclusive distributor in Brazil for certain Kraft coconut products.[4] According to Kraft, "[o]n or about the date this suit [was] filed [Nov. 7, 2007], although it was not required to do so, KFIC [] sent a Notice of Non-Renewal of the Agreement to PCI, effectively terminating the Agreement on February 21, 2008." [Rec. Doc. 1 ¶ 15; Rec. Doc. 14-2, p.2] According to the contract:

> Upon termination of this Agreement for whatever reason whatsoever other than due to a breach hereof by PCI, including the expiration of the term of the Agreement, Kraft agrees that for a period of twelve (12) months from the date of such expiration or termination that it shall not, directly or indirectly, sell the Product to the "active

---

Louisiana.

[3]In its Answer, PCI denies subject matter jurisdiction exists, stating KFIC "has no claim and therefore cannot support the jurisdictional amount." [Rec. Doc. 9, ¶ 1] (PCI did not file a motion to dismiss pursuant to F.R.C.P. 12(b)(1)(lack of subject-matter jurisdiction) prior to filing its Answer; nor has it attempted, thus far, to further address its assertion that jurisdiction is absent.) The Court notes that PCI's response in its Answer is not the appropriate inquiry - rather, this Court has jurisdiction if the *amount in controversy* exceeds $75,000. Furthermore, in its Answer, PCI has asserted a compulsory counterclaim for: (1) breach of contract; (2) "declaratory relief" (i.e. a judgment holding the restrictive covenant is enforceable); and (3) defamation. In the counterclaim, PCI asserts "[t]his Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as this is a civil action where the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states." (The Court notes the quoted language is identical to KFIC's language contained in its Complaint.) [Id. at 9; *compare with* Rec. Doc. 1, ¶ 1] KFIC has not challenged PCI's assertion of jurisdiction. A review of the allegations made in both the Complaint and the Counterclaim indicate it is highly unlikely the amount in controversy is less than $75,000, however, should it appear at a later date that this Court lacks jurisdiction, this matter will be dismissed. *See* F.R.C.P. 12(h)(3); Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006)("The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment. Rule 12(h)(3) instructs: 'Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.'")

[4] On January 5, 1993, the contract was amended, and PCI became the "sole and exclusive distributor of certain other ... products for sale in the country of Brazil," namely Kraft Caramel, Kraft Marshmallows, Kraft Cheese Powders, Kraft Natural and Processed Cheeses, Kraft Grated Cheeses, Kraft K-Blazer, Kraft Non-Fat Dry Milk Alternatives, and OMI Meat Pieces and Flavors. [See Rec. Doc. 7-4 ("Contract"), Amendment One]

clients of PCI" in Brazil that have been clients of PCI prior to or during the term of this Agreement. For purposes of the preceding sentence, "active clients of PCI" shall mean PCI's customers in Brazil who purchased at least twenty thousand (20,000) pounds of the Product within the last twelve (12) months prior to the effective date of expiration or termination.

[Contract, p.6] It is this section of the contract (entitled "Covenant of Non-Solicitation") that Kraft asks this Court to declare void and unenforceable.[5]

Plaintiff argues the Covenant of Non-Solicitation ("covenant") is void and unenforceable, as it creates "a restraint of trade for which no pro-competitive justifications can be offered, and is invalid under Louisiana law." [Rec. Doc. 7-3, p. 3] Defendant urges the Court to deny plaintiff's motion, arguing the covenant is valid and enforceable, and concluding: "Now, at the termination of the relationship, KFIC seeks to justify and take PCI's customers and effectively restrain PCI from

---

[5]The entire section of the contract reads as follows:

Covenant of Non-Solicitation. During the term of this Agreement, Kraft agrees not to enter into discussions or negotiations regarding the Product, or in any manner conduct business regarding the Product, or in any manner conduct business regarding the Product, with the clients or PCI situated in Brazil, without the express written consent of PCI or except as provided in the section titled Distributorship Services. Upon termination of this Agreement for whatever reason whatsoever other than due to a breach hereof by PCI, including the expiration of the term of the Agreement, Kraft agrees that for a period of twelve (12) months from the date of such expiration or termination that it shall not, directly or indirectly, sell the Product to the "active clients of PCI" in Brazil that have been clients of PCI prior to or during the term of this Agreement. For purposes of the preceding sentence, "active clients of PCI" shall mean PCI's customers in Brazil who purchased at least twenty thousand (20,000) pounds of the Product within the last twelve (12) months prior to the effective date of expiration or termination.

Commencing on the first anniversary of the effective termination or expiration date of this Agreement, and continuing for one (1) year thereafter, Kraft grants to PCI a right of first refusal with respect to offers to purchase the Product made to Kraft by "active clients of PCI" (as of the effective date of termination or expiration). If PCI exercises the aforesaid right, then PCI shall purchase the Product from Kraft in accordance with the same terms and conditions agreed to between the respective "active client of PCI" and Kraft; provided, however, that payment to Kraft will be handled in the same manner as described hereinabove in the section titled "Payment Terms."

competing with it." [Rec. Doc. 14-2, p. 2]

Plaintiff argues Louisiana law is the law applicable to this matter, citing a provision of the contract entitled "Construction," which states as follows: "This Agreement shall be construed and enforced in accordance with the laws of the State of Louisiana venue Lafayette." [Contract p. 11; Rec. Doc. 7-3, n.1 and 4] Although defendant does not explicitly state whether Louisiana law is, or is not applicable, defendant primarily supports its argument with federal law, merely noting "Louisiana law mirrors federal law." [Rec. Doc. 14-2, p. 9] However, rather inconsistently, defendant later states, "By analogy, this Court should scrutinize and reject the contention that this is simply a matter of state law"; and "Movers Reliance upon LSA R.S. § 51:122(A) is Misplaced." [Rec. Doc. 14-2, pp. 13, 14]

For the following reasons, the Court finds Kraft has failed to demonstrate it is entitled to judgement as a matter of law, and consequently, the motion is DENIED in its entirety. *See* FED. R. CIV. P. 56(c).

1. Plaintiff has failed to carry its burden and show whether, as a matter of law, the parties' choice of law provision is valid and enforceable.[6]

---

[6]Book IV of the Louisiana Civil Code, La. C.C. art. 3515 *et. seq.*, sets forth Louisiana's conflict of laws provisions. While the code generally allows contracting parties the freedom to choose what law will apply to contractual disputes, *see* La. C.C. art. 3540, this rule is not without exception. If the parties choice of law "contravenes the public policy of the state whose law would otherwise be applicable" absent a choice of law provision, the selected law will not be applied to the dispute. Id. La. C.C. art. 3537 sets forth the analysis used to determine whether the selected law "contravenes the public policy of the state whose law would otherwise be applicable":

> [A]n issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of

2.  Plaintiff has failed to carry its burden and show, as a matter of law, that La. R.S. 51:121 *et seq.* (Louisiana's version of the Sherman Act, 15 U.S.C. § 1 *et seq.*) is the law applicable to this matter. The Louisiana Act, by its own terms, regulates only "commerce within the geographic boundaries of this state." La. R.S. 51:121-122. By plaintiff's own admission:

> It is undisputed that KFIC is a Delaware corporation, with its principal place of business in Tennessee, that primarily manufactures the products at issue in Minnesota (with other facilities in Massachusetts, Delaware and Tennessee), then distributes those products primarily from Minnesota (with other shipping occurring from Illinois, New Jersey, and New York). PCI is a Louisiana corporation, owned and managed by Louisiana citizens, with its principal place of business and almost all of its operations occurring in Louisiana. The activities at issue here are well within the scope of the Sherman Act.

[Rec. Doc. 21 at 5] Additionally, although Kraft neglects to address the following in its briefing, the contract states, "Kraft, upon request from PCI, shall supply to PCI reasonable quantities of sales samples direct from *Kraft's plant in the Philippines* or from inventory in the United States." [Contract p.3 (emphasis added)] Also, Kraft has provided no support for its statement that PCI conducts "almost all of its operations" in Louisiana. Finally, Kraft's complaint is that:

> Under the terms of the Restrictive Covenant, KFIC is restricted from selling its own products to certain entities throughout the country of Brazil. Thus, as drafted, there are entities in Brazil that will be barred from having the option to purchase KFIC products solely because of the Restrictive Covenant between KFIC and PCI."

[Rec. Doc. 7-3, p.4] Thus, this appears to be a contract involving interstate as well as international commerce, and the Court is at a loss to see how the Louisiana Anti-Trust laws, which purport to regulate commerce only in the State of Louisiana, would apply to this matter.[7]

---

facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

[7]The Court notes plaintiff's states, "[t]here is no support in Louisiana (or federal) law for upholding [the covenant]," and "the result [a finding that the covenant is void and unenforceable] is the same under either body of law." [Rec. Doc. 7-3, p.4] However, plaintiff has provided insufficient support for these statements, and therefore failed to carry its burden. For example, plaintiff cites <u>Southern Tool and Supply, Inc. v. Beerman Precision, Inc.</u>, 818 So. 2d 256 (La. App. 4th Cir. 2002) as authority for its argument that Louisiana's anti-trust law applies, stating "the Fourth Circuit held that Louisiana's antitrust law applies even where the matter at hand involves interstate and intrastate commerce when the anti-competitive effects occurred in Louisiana." [Rec. Doc. 21, p.4] However, not only is that case non-binding upon this Court, plaintiff additionally fails to cite the portion of that same case, which states: "Thus, a state court is not precluded from exercising jurisdiction to enforce its own anti-trust law *unless*

3. Plaintiff has failed to conduct a proper jurisprudential analysis, under either Louisiana or federal law, addressing whether the covenant constitutes an unlawful restraint of trade.[8]

---

*there is a direct or substantial impact on interstate commerce law.*" Id. at 262-63. (emphasis added) Plaintiff also ignores that portion of the case, which holds: "Louisiana's state anti-trust law may be applied unless the burden on interstate commerce directly or substantially impedes the free flow of commerce... ." Id. at 263.

[8]For example, at pp. 5-6 of its brief, plaintiff begins an analysis by stating:

> The Restrictive Covenant is a restriction of trade between a manufacturer and a distributor to certain persons or entities in the country of Brazil. The Restrictive Covenant comprises what is known as "vertical" restraint of trade – i.e. a restraint "up and down" the distribution chain. *Southern Tool & Supply, Inc. v. Beerman Precision, Inc.*, 862 So.2d 271, 280 (La. App. 4th Cir. 2002). The validity of a vertical restraint of trade (such as the instant one) is measured by the Rule of Reason. *Id.; see also Plaquemine Marine, Inc. v. Mercury Marine*, 859So. 2d 1 10, 118 (La. App. 1st Cir. 2003).
>
> Under the Rule of Reason, a court examines, inter alia, the procompetitive effects of the restraint against the effect it would have on the market. *Board of Trade v. United States*, 246 U.S. 231, 238 (1918). Even under that analysis, the law is clear that an agreement that has an "actual adverse effect" on competition is impermissible. *Electronic Communs. Corp. v. Toshiba Am. Consumer Products, Inc.*, 129 F.3d 240, 244 (2nd Cir. 1997). The Supreme Court has explained:
>
>> Absent some countervailing procompetitive virtue – such as for example, the creation of efficiencies in the operation of a market or the provision of goods and services – such an agreement limiting consumer choice by impeding the "ordinary give and take of the marketplace" cannot be sustained under the Rule of Reason.
>
> *Federal Trade Commission v. Indiana Federation of Dentists*, 476 U.S. 447, 459 (1986)(citations omitted). Thus, the ultimate inquiry on the Restrictive Covenant is "whether or not the challenged restraint <u>enhances</u> competition." *NCAA v. Board of Regents*, 468 U.S. 85, 104 (1984) (emphasis added). Here, it plainly does not.
>
> The Restrictive Covenant in this matter prevents KFIC products from being freely marketed to certain Brazilian consumers. There is simply no articulable procompetitive benefit to such a restraint. It can have only one effect – to reduce interbrand competition. As such, this Court should go no further. The Restrictive Covenant is unenforceable as a matter of law, and this motion should be granted.

[Rec. Doc. 7-3, pp. 5-6 (footnote omitted)]

The Court finds Kraft's analysis to be insufficient. In one of the cases cited by Kraft above, <u>Board of Trade of Chicago v. U.S.</u>, the federal government filed a lawsuit against the Chicago Board of Trade, alleging its adoption of "the call rule" was a violation of the Anti Trust laws (a.k.a. "the Sherman Act"). The United States Supreme Court stated as follows:

4. Plaintiff has failed to adequately support its argument, "Any attempt by PCI to rely on Louisiana's non-competition statute at § 23:921 in an attempt to salvage the Restrictive Covenant must fail." [Rec. Doc. 7-3, p.7] First, plaintiff has not conducted a proper legal analysis, addressing whether or not Louisiana's non-competition statute is applicable to this matter under Louisiana conflict of law provisions. Second, plaintiff has not provided support for its position that the Louisiana non-compete statute would even apply to a non-solicitation agreement, which applies to customers *in a foreign country*. (Plaintiff's reliance upon a non-binding, Louisiana Second Circuit case, which found a non-competition agreement unenforceable where it purported to prevent plaintiff's former employee from competing

---

> The government proved the existence of the rule and described its application and the change in business practice involved. It made no attempt to show that the rule was designed to or that it had the effect of limiting the amount of grain shipped to Chicago; or of retarding or accelerating shipment; or if raising or depressing prices; or of discriminating against any part of the public; or that it resulted in hardship to any one. The case was rested upon the bald proposition, that a rule or agreement by which men occupying positions of strength in any branch of trade, fixed prices at which they would buy or sell during an important part of the business day, is an illegal restraint of trade under the Anti-Trust Law. But the legality of an agreement or regulation cannot be determined by so simple a test, as whether it restrains competition. Every agreement concerning trade, every regulation of trade, restrains. To bind, to restrain, is of their very essence. *The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts.* This is not because a good intention will save an otherwise objectionable regulation or the reverse; but because knowledge of intent may help the court to interpret facts and to predict consequences.

Id. at 238 (emphasis added). Thus, although Kraft cites the case laying forth the analysis (but omits any reference to that analysis), it ultimately does no more than did the government in that case; that is, Kraft merely asserts "the bald proposition" that an agreement which has "an 'actual adverse effect' on competition is impermissible," citing non-binding jurisprudence in support.

Additionally, the Court notes the principles set forth in Denison Mattress Factory v. Spring-air Co., 308 F.2d 403 (5th Cir. 1962):

> If the primary purpose, however disguised, is to stifle competitors and create a monopoly, then the agreement or contract is struck down. However, the cases seem to follow the principle that if the primary purpose of the contract is lawful, e.g., to protect one in the fruits of his labor, and if the arrangement was actuated by or could be explained on the basis of legitimate business justification as opposed to the desire to increase market control through economic leverage, then the court will generally hold any incidental restraint of trade, not harmful to competition of the public, to be lawful.

against defendant "anywhere within the continental United States," is insufficient to support this position.) Finally, plaintiff has failed to address <u>Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products</u>, 696 So.2d 1973 (La. 1997), which held Louisiana's non-competition statute did not apply to a clause which prohibited competition with a party's business activity for three years after termination of contract, where the contract was between two independent corporations on equal footing.

Due to the foregoing, the Court DENIES the Motion for Partial Summary Judgment [Rec. Doc. 7], filed by plaintiff, Kraft Food Ingredients Corp.[9]

THUS DONE AND SIGNED this ___28___ day of ___July___, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[9] Counsel for defendant is also cautioned, that in future submissions to this Court, he also will be required to properly support his arguments. For example, a large portion of defendant's opposition memorandum contains no authority for various statements of law. *See e.g.*, pp. 4-6, pp. 10-11, p. 14. Additionally, defendant fails to cite the Court to the specific page of many of the cases for which he has provided citations. This is particularly problematic in this instance, as many of the cases cited by both parties are unusually long.