RECEIVED

AUG 2 7 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| KRAFT FOOD INGREDIENTS, CORP | CIVIL ACTION NUMBER: 07-1842 |
| VERSUS | JUDGE DOHERTY |
| PCI INTERNATIONAL CONSULTANTS, INC., ET AL | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Currently pending before this Court is a "Motion to Dismiss Defamation Claim and Motion for More Definite Statement" [Rec. Doc. 15], filed by plaintiff, Kraft Food Ingredients Corp. ("Kraft," sometimes referred to as "KFIC"). Defendants and Counter Claimants, PCI International Consultants Inc. ("PCI") and L. Felippe C. de Castro ("Mr. Castro") (collectively referred to as "PCI"), oppose the motion. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

### I. Background

According to all parties, effective February 21, 1992, Kraft and PCI entered into a contract, whereby PCI became the sole and exclusive distributor in Brazil for certain Kraft coconut products.[1] According to Kraft, in September of 2007, it learned of a lawsuit pending in the Western District of Louisiana, entitled "PCI International, Inc. v. Ducoco Productos Alimenticios S.A. and Nelson Nogueira Pinheiro," Civil Action No. 02-1487 (Haik, J.). [Rec. Doc. 1, ¶ 17] Kraft states, "In connection with defendant's request to take the deposition of KFIC in that suit, KFIC learned that

---

[1] On January 5, 1993, the contract was amended, and PCI became the "sole and exclusive distributor of certain other ... products for sale in the country of Brazil," namely Kraft Caramel, Kraft Marshmallows, Kraft Cheese Powders, Kraft Natural and Processed Cheeses, Kraft Grated Cheeses, Kraft K-Blazer, Kraft Non-Fat Dry Milk Alternatives, and OMI Meat Pieces and Flavors. [See Rec. Doc. 9, Ex.C ("Contract"), Amendment One]

PCI and/or Mr. de Castro distributed non-KFIC coconut products in Brazil through an enterprise called Highark Trading." [Id. at ¶ 18] On October 3, 2007, Paul Kenny, Marketing Director for Kraft, prepared a sworn "Declaration" for use in the Ducoco matter, stating in pertinent part:

> On or about September 20, 2007, I was provided copies of the Affidavits of Melissa B. Stears, Israel Otero, and Lucien Albert Francfort from the captioned matter. Before that date, I was entirely unaware of the existence of Highark or the facts contained in those Affidavits regarding its activities and the activities of L. Felippe de Castro. The facts described in the Affidavits are inconsistent with KFIC's expectations.

[Rec. Doc. 19-3, Ex. B] The parties in the Ducoco matter entered into an amicable settlement on October 5, 2007. The Court issued a final judgment of dismissal, with prejudice, on December 13, 2007. [Ducoco at Rec. Doc. 121]

On November 7, 2007, Kraft filed this lawsuit against PCI and Mr. De Castro, alleging PCI's distribution of non-Kraft coconut products in Brazil constitutes a breach of the contract entered into by and between Kraft and PCI.[2] Kraft asserts jurisdiction over this matter exists pursuant to 28 U.S.C. § 1332 (diversity of citizenship), as the parties are citizens of different states[3], and the matter in controversy exceeds $75,000. As jurisdiction in this matter is premised upon diversity of citizenship, Louisiana law governs the substantive issues of law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

In its motion, Kraft moves the Court to dismiss PCI's counterclaim for defamation pursuant to Fed. R. Civ. P. 12(b)(6) ("failure to state a claim upon which relief can be granted"), arguing: (1) the claim is premature as a matter of law; (2) an "affirmative defense," which addresses statements

---

[2]Kraft asserts four causes of action: (1) breach of contract; (2) tortious interference with a contract; (3) intentional misrepresentation/detrimental reliance; and (4) declaratory relief regarding a "covenant of non-solicitation" contained within the contract.

[3]All parties appear to agree Kraft is a Delaware corporation with its principal place of business within the State of Tennessee, PCI is a Louisiana corporation with its principal place of business within the State of Louisiana, and Mr. De Castro is a citizen of the State of Louisiana. [Rec. Docs. 1 and 9]

by Paul Kenny (Kraft's employee) in connection with the Ducoco matter, cannot support PCI's separate and distinct "counterclaim" for defamation, which is exclusively premised upon statements made by Kraft in this lawsuit; and (3) if the Court finds the statements made by Paul Kenny are properly before it as part of PCI's counterclaim for defamation, the claim nevertheless must be dismissed on the merits, as "Paul Kenny's statement is protected by the absolute immunity afforded witnesses in judicial proceedings." [Rec. Docs. 35, p.2] Additionally, Kraft moves the Court to order PCI to provide a more definite statement, pursuant to FED. R. CIV. P. 12(e), in support of its breach of contract claim. [Rec. Doc. 15, p.2]

## II. Motion to Dismiss

A motion to dismiss for failure to state a claim upon which relief can be granted "admits the facts alleged in the complaint [or counterclaim], but challenges plaintiff's rights to relief based upon those facts." Tel-Phonic Services, Inc. v. TBS International, Inc., 975 F.2d 1134, 1137 (5th Cir. 1992). To avoid the dismissal under Rule 12(b)(6), the complaint/counterclaim must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (quotation marks, citations, and footnote omitted). "The plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." Oppenheimer v. Prudential Securities, Inc., 94 F.3d 189, 194 (5th Cir. 1996). "At the same time, a plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim." Kane Enterprises v. MacGregor (USA), Inc., 322 F.3d 371, 374 (5th Cir. 2003). "We will thus not accept as true conclusory allegations or

unwarranted deductions of fact." Id. (internal quotations omitted).[4]

In its motion, Kraft first argues PCI's defamation claim must be dismissed, because the claim is premature as a matter of law.[5] [Rec. Docs. 15-2, 35] PCI has made the following allegation

---

[4]The general rule when deciding a Rule 12(b)(6) motion is that if matters outside of the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment pursuant to Rule 56. FED. R. CIV. P. 12(b); *see also* Clark v. Tarrant County, Texas, 798 F.2d 736, 745 (5th Cir. 1986). One exception is that "the Court may review the documents attached to the motion to dismiss . . . where the complaint refers to the document and they are central to the claim." Kane Enterprises at 374. Additionally, if matters outside the pleadings are presented but not excluded by the Court, all parties must be given notice and a reasonable opportunity to respond as provided for in Rule 56. Clark at 745. That requirement has been interpreted by the Fifth Circuit as follows:

> Under Rule 56 it is not necessary that the district court give ten days' notice after it decides to treat a Rule 12(b)(6) motion as one for summary judgment, but rather after the parties receive notice that the court could properly treat such a motion as one for summary judgment because it has accepted for consideration on the motion matters outside the pleadings, the parties must have at least ten days before judgment is rendered in which to submit additional evidence. The proper question, therefore, is whether . . . [plaintiff] had ten days' notice after the court accepted for consideration matters outside the pleadings.
>
> . . . At least from the date . . . [plaintiff] himself submitted to the court matters outside the pleadings, June 10, . . . [plaintiff] was on notice that the trial court could treat the motion to dismiss as a motion for summary judgment. . . . [T]he notice required is only that the district court could treat the motion as one for summary judgment, not that the court would in fact do so. The Supreme Court has recently observed that "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." The notice provisions of Rule 12(b) and Rule 56 were not violated.

Washington v. Allstate Ins. Co., 901 F.2d 1281, 1284 (5th Cir. 1990)(internal edits and citations omitted). In this matter, PCI has presented matters outside of the pleadings, specifically, the Declaration of Paul Kenny. However, PCI has been on notice the motion to dismiss could be treated as a motion for summary judgement from the time of PCI's submission of matters outside of the pleadings on January 7, 2008. [Rec. Doc. 19]

[5]Louisiana defines defamation as "a tort involving the invasion of a person's interest in his or her reputation and good name." Kennedy v. Sheriff of East Baton Rouge, 935 So.2d 669, 674 (La. 2006). "Statements are defamatory only if the words, taken in context, tend to injure the person's reputation, to expose the person to public ridicule, to deter others from associating or dealing with the person, or to deprive the person of public confidence in his or her occupation." Davis v. Borskey, 660 So.2d 17, 22 (La.1995).

> Four elements are necessary to establish a claim for defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. The

-4-

concerning defamation in the section of its pleading entitled, "Counterclaim":

> The claim [sic] of KFIC are libelous and injurious to PCI and L. Felippe C. de Castro. The claims have place [sic] the company and its owner in a false light without factual support. The allegations made are intentional, negligent, and malicious. PCI and L. Felippe C. deCastro [sic] seek damages reasonable under the facts and circumstances estimated at no less than $250,000.00.

[Rec. Doc. 9, ¶ 11] PCI makes no other allegations addressing defamation in the "Counterclaim" section of its pleading. However, in its opposition to Kraft's motion to dismiss, PCI argues its claim of defamation is not premised solely upon those statements made by Kraft in its Complaint, but is also based upon statements made by Paul Kenny in the Ducoco matter. PCI states as follows:

> On or about February 21, 1992, KFIC and PCI entered into an Exclusive Distributorship Agreement.... The contract supported, in part, a long term contract with a Brazilian company known as Ducoco Produtos Alimenticios S.A. ("Ducoco"). Beginning in March 1998, Ducoco failed to satisfy its obligation for orders of products claiming impossibility of performance due to a governmental rule forbidding importation of coconut products from the Philippines (the KFIC product). Litigation ensued in the matter entitled "PCI International, Inc. V. Ducoco Productos [sic] Alimenticious [sic] S.A. nd [sic] Nelson Noguira [sic] Pinheiro." In connection therewith, Ducoco contacted Paul Kenny, KFIC's Marketing Director, for information on the issues before the Court, particularly a sale of coconut by HighArk Trading Company to Ducoco. Despite his personal knowledge of the circumstances and approval of the transaction, he provided a Declaration . . . which was knowing [sic] false, and which caused damage to PCI's claim in the Ducoco litigation and which through discovery, defendants will show have placed them in a false light and have caused damage.

[Rec. Doc. 19-1, pp.1-2] PCI later argues:

> Defendants herein were injured, in part, by the Declaration of Paul Kenny, an employee of KFIC acting in the course and scope of his employment. The Declaration was made on October 3, 2007, and provided to counsel for Ducoco. KFIC's Complaint was filed on November 7, 2007. Paul Kenny defames defendants when he states impropriety by defendants as follows:

---

fault requirement is generally referred to in the jurisprudence as malice, actual or implied. Kennedy at 674.

> 10.
>
> On or about September 20, 2007, I was provided copies of the Affidavits of Melissa B. Stears, Israel Otero, and Lucien Albert Francfort from the captioned matter. Before that date, I was entirely unaware of the existence of Highark or the facts contained in those Affidavits regarding its activities and the activities of L. Felippe de Castro. The facts described in the Affidavits are inconsistent with KFIC's expectations.

Defendants set forth this defamation claim by Answer [Doc. 9] stating in part:

> **Seventh Affirmative Defense**
>
> **Paul Kenny, employee and representative of KFIC specifically knew of the problems caused by the Brazilian tariff increase beginning in 1995 and authorized the transactions. (See attached Exhibit A.) Any statements by him to the contrary are false. Furthermore, PCI and L. Felippe C. de Castro had permission to sell non-Baker's coconut. (See attached Exhibit B)**
>
> Further, defendants herein have been damaged by the false statements made in the Complaint for Declaratory Relief, particularly paragraphs 18, 19-24, 27-28, 32, 38-41, 4[sic]-43, 47, 48, and 50.

[Id. at 3-4 (emphasis in original)]

The Court finds any claim of defamation, premised upon allegations contained in the Complaint in the pending matter, is clearly premature:

> It is also well settled in the jurisprudence of this state that an action for libelous statements made by a party litigant cannot be maintained until the proceeding in which such allegations are made has terminated, as the cause of action does not arise until the party making the allegations has had the opportunity of proving the truth of the allegations in the proceedings in which they are made. And it is also well settled in our jurisprudence that an action for defamatory allegations cannot be made the basis for damages by a reconventional demand until the final termination of the main demand, and that such claim for damages are premature; that the claim for damages comes in ease only after the litigant making the charges has been given an opportunity to prove them in the suit in which they are made and has failed to make such proof.

Loew's, Inc. v. Don George, Inc., 110 So.2d 553, 561 (La. 1959)(quotations and citations omitted); *see also* Fluor Ocean Services, Inc. v. Hampton, 502 F.2d 1169, 1170 (5th Cir. 1974)("With

consistent frequency the Louisiana courts have applied this well settled principle.").[6]

Insofar as PCI's claim of defamation relies upon the declaration of Paul Kenny, submitted in the Ducoco matter, the Court finds any such claim, standing alone, would also be premature. As previously noted, Kraft states it learned of PCI's lawsuit against Ducoco in September of 2007, and "[i]n connection with defendant's request to take the deposition of KFIC in that suit, KFIC learned that PCI and/or Mr. de Castro distributed non-KFIC coconut products in Brazil through an enterprise called Highark Trading." [Rec. Doc. 1, ¶¶ 17, 18] Paul Kenny executed the Declaration on October 3, 2007. On October 5, 2007, the matter settled. Kraft filed this suit on November 7, 2007.[7] The suit alleges, primarily, PCI and/or Mr. de Castro's distribution of non-Kraft coconut products in Brazil constitutes a breach of the contract entered into by and between Kraft and PCI. [Id. at ¶ 27]

The Court finds plaintiff's one allegation of defamation arising out of the Ducoco litigation is so intertwined with the allegation of defamation arising out of the complaint filed in this matter,

---

[6] The purpose of this rule has been stated as follows:

> The purpose of requiring an end to the initial litigation is obvious. A trier of fact who is trying to resolve conflicting claims should not have the further burden of deciding at the same time whether defamation is involved in the pleadings of one party or the other.
>
> Those who labor daily in the law often do not realize the impact of a suit on the average layman. John Citizen when named a defendant usually reacts with a desire to sue for the insult. However, by the conclusion of trial, his temper has generally cooled and he is happy to be free of the court system. Encouraging a countersuit for defamation in each and every lawsuit discourages legitimate claims and burdens the courts unnecessarily.

Union Service & Maintenance Co., Inc. v. Powell, 393 So.2d 94, 100 (La. 1980)(Watson, J., concurring); see also 5-Star Premium Finance, Inc. v. Wood, 2000 WL 1678010, *1 (E.D.La.)(Berrigan, J.)("Delaying the consideration of defamation claims has the dual benefit of allowing the Court to determine what has actually happened in the dispute and provides a cooling-off period before additional litigation is commenced.")

[7] A final judgment of dismissal was not issued in the Ducoco matter until December 13, 2007. For future filings, Kraft is referred to "Instructions for Attorneys Completing Civil Cover Sheet Form JS 44," Section VIII ("Related Cases"), found at www.lawd.uscourts.gov.

that the two should not be severed and tried separately. To proceed in such a fashion would lead to a waste of judicial resources, piecemeal litigation, and it would fail to support the policy or purpose of Louisiana's long-standing, jurisprudential rule, which proclaims an action for defamation is premature where it arises out of allegations made in a judicial proceeding against a party to those proceedings.[8] Due to the foregoing, the Court need not address Kraft's remaining arguments as to the motion to dismiss, and the motion to dismiss PCI and Mr. de Castro's defamation claim is GRANTED.

### III. Motion for a More Definite Statement

Kraft additionally moves the Court to order PCI to provide a more definite statement supporting its claim for breach of contract, arguing: "PCI's breach of contract claim fails to articulate a short, plain statement of the grounds on which it seeks to impose liability against KFIC." [Rec. Doc. 15, p.2] In support, Kraft reasons as follows:

---

[8] *See also* Calvert v. Simon, 311 So.2d 13, 17 (La. 2nd Cir. 1975). There, plaintiff filed suit for defamation against her ex-husband and others, premised upon testimony provided in a custody lawsuit held before another court. Plaintiff filed the defamation suit while the custody suit was pending, on writ, before the Louisiana Supreme Court. Finding the defamation suit to be premature until final adjudication of the custody matter, the Court, in response to separate but intertwined allegations of defamation, further found:

> Plaintiff's petition also alleges that the defendants made defamatory statements to each other out of court prior to the trial of the child custody suit. Plaintiff argues that her cause of action based on these out-of-court statements is not subject to the same rule which applies to statements made in the judicial proceeding. Taking the allegations of the petition as a whole, the essence of the suit is that the defendants all conspired to produce false allegations and evidence against plaintiff in the child custody suit and we do not view the conversations between the alleged co-conspirators as giving rise to a separate cause of action.

Id. at 17. As in Calvert, the essence of the suit before this Court is that Kraft and its employee have made defamatory allegations against PCI and Mr. de Castro in the Ducoco matter *and* in the matter before this Court. The alleged defamatory statements in both matters essentially accuse PCI and Mr. de Castro of breaching the contract between Kraft and PCI. Like Calvert, this Court does not view the Declaration of Kraft's employee in the Ducoco matter as giving rise to a separate cause of action.

-8-

PCI's breach of contract counterclaim is, at best, conclusory. Indeed it is contained in one paragraph:

> Under the Exclusive Distributorship Agreement and Amendment One to Exclusive Distributorship Agreement, a copy of which is attached hereto as Exhibit C, PCI was appointed and recognized as KFIC's sole and exclusive distributor in Brazil. Furthermore, the agreements provided that "PCI shall purchase the Product from Kraft for its own account for resale, and pricing and other terms of resale shall be at the sole discretion and responsibility of PCI." Furthermore, KFIC was prohibited from distributing KFIC products in Brazil. Furthermore, KFIC was obligated to provide technical services as may be requested by PCI. Notwithstanding, KFIC failed to provide technical support, PCI caught KFIC selling products in Brazil despite the exclusivity provision and specific language that "Kraft will not knowingly sell to any customer whose known intention is to ship the Product . . . into Brazil. KFIC systematically engaged in acts in breach of contract including, but not limited to, shipping directly to Brazilian customers of PCI, shipping indirectly through a foreign distributor, and entering into Global pricing agreement that effectively forces PCI to reduce its price and thus profitability. KFIC now seeks to justify and take PCI's customers and is intentionally interfering with PCI's relationship with its customers. PCI will be irreparably injured if KFIC is allowed to use false and frivolous allegations to circumvent its contractual and legal obligations. PCI reserves it rights and claim for injunctive relief and damages.

Counterclaims, pp. 9-10.

These vague allegations do not provide KFIC or the Court with a "statement of circumstances, occurrences, and events in support of the claim presented." 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1202 p. 94, 95 (3d ed. 2004). PCI's counterclaim provides no specific information to support its vague and blanket allegations that: (a) KFIC distributed unknown products through unknown channels in Brazil; (b) KFIC failed to provide some type of technical services; (c) KFIC's non-Brazilian distributors sold to Brazilian customers (it does not provide any information regarding the identities of the distributors through whom PCI believes KFIC sold products); or (d) the "Global pricing agreement" or how it breached the Agreement. Instead, the Complaint is completely devoid as to who, what, where, when and how of the claim purportedly made against it, or what portion of the parties' fifteen-year business relationship is at issue.[9]

---

[9] Kraft seeks more facts than are required under our system of "notice pleading." Rule 8(a) requires merely "a short and plain statement of the claim showing that the pleader is entitled to relief." The "who, what, where, when and how of the claim" are not required unless a party makes allegations of

[Rec. Doc. 15-2, pp. 6-7]

PCI has provided no argument in opposition to Kraft's motion, rather, PCI has merely recited its interpretation of Rule 12(e), certain allegations contained in its Answer and Counterclaim, and has referred to one case from the Middle District of Florida.

Rule 12(e) provides as follows:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Motions for more definite statements are traditionally viewed with disfavor. Mitchell v. E.Z. Way Towers, Inc., 269 F.2d 126, 132 (5th cir. 1959). This is so, because:

> In view of the great liberality of F.R.Civ.P. 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss. It is to be noted that a motion for more definite statement is not to be used to assist in getting the facts in preparation for trial as such. Other rules relating to discovery, interrogatories and the like exist for this purpose.

Id.

Applying the foregoing legal principles to the instant matter, the Court finds PCI's counterclaim has been stated with sufficient particularity to "provide notice of circumstances which give rise to the claim . . . ." Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th Cir.1999). Specifically, PCI states Kraft has breached the contract between the parties by: (1) failing to provide

---

fraud or mistake. FED. R. CIV. P. 9(b); *see also* Benchmark Electronics, Inc. v. J.M. Huber, Corp., 343 F.3d 719, 724 (5th Cir. 2003)("At a minimum, Rule 9(b) requires allegations of the particulars of time, place and contents of the false representations . . . . Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out.")(Internal quotations and citations omitted). PCI has not alleged "fraud" or "mistake," but merely breach of contract.

PCI with technical support; (2) selling products to PCI's customers in Brazil; (3) entering into Global pricing agreement; and (4) intentionally interfering with PCI's relationship with its customers.[10] Accordingly, Kraft's motion for a more definite statement is DENIED.

Lafayette, Louisiana this ___ day of _____, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[10]Although Kraft designates PCI's entire allegation (found at ¶ 11 of its counterclaim) as constituting a claim for breach of contract, the final allegation ("KFIC now seeks to justify and take PCI's customers and is intentionally interfering with PCI's relationship with its customers") seems more akin to a claim for "tortious interference with a contract." See e.g. 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La. 1989). PCI has not labeled its claims contained within its counterclaim. Accordingly, the parties are ORDERED to submit an outline of all claims and defenses, in accordance with this Court's standard outline procedure for use in bench trials. [See Court Ex. "A," attached and deadlines contained therein] As this matter is set as a bench trial, the parties shall submit an outline rather than a "pretrial order." [See Rec. Doc. 36 (Scheduling Order, item no. 11)]